Next case is 23-1723. Saloman-Guillen v. Garland. Mr. Winograd, good to see you again. Likewise, your honor. Thank you, Chief Judge Diaz, and may it please the court. The court should remand this case to the board for either of two reasons. First, the regulations in place at the time the board dismissed my client's appeal did not permit temporary board members to serve renewable terms. Second, the agency erred in finding that my client's U.S. citizen wife would not experience extreme hardship in the event that he was removed to El Salvador. Unless the court prefers otherwise, I will address the questions in that order. I'd just like to clarify an initial matter. You defrauded, your client defrauded his employer of almost $1.5 million, and you don't seem to be contesting the accuracy of that. Now, something in which fraud is a significant element is almost by definition an aggravated deportable ground that people are normally removed for that kind of thing, and that it's not contested. That's correct. We have not contested the ground of removability. You agree it's an aggravated felony? The agency found it, and we have not challenged it, so correct. Now, on the temporary board member issue, we believe the government's reading of the regulation in question is not plausible as a matter of text or history. But even if it was, it would either violate the appointments clause of the Constitution, or at the very least raise a very serious constitutional question. So the constitutional avoidance canon provides yet another reason why the court should adopt our reading of the regulation. The reason that the government's interpretation would violate the Constitution, which we explained in the letter we submitted yesterday, is that the reg allowed temporary board members to be appointed by the E.O.R. director himself. The E.O.R. director, of course, is not the head of any department, and if temporary board members could serve renewable terms, they would then hold a continuing rather than temporary position, and would thus qualify as officers under the appointments clause who could only be appointed by the Attorney General. I thought that's what happened in this case. Yes, we are not saying that the appointments clause was violated in this case. The Attorney General did make the appointment. Our position is simply one of statutory or regulatory interpretation, that the regulation itself allows the E.O.R. director to make these appointments. And so therefore, if the E.O.R. director could renew their terms, then they would be officers under the appointments clause, and so the regulation would be unconstitutional. So we would ask the court to apply... What standing do you have to jump into this whole issue? We certainly have Article 3 standing, because my client is subject to an order of removal. I mean, other circuits have considered this issue. Not one has agreed with the government's argument that we lack quote-unquote standing. I don't see how that could be the case, when we've clearly, my client faces to suffer an injury of removal to El Salvador. We have to deal with the fact that Congress has delegated to the Attorney General a significant say in how the deportation process is to be organized. And what we have here and what you're attacking is a standard that hasn't gone through a notice comment period. I'm not sure how it affects your rights in any tangible way. I'm not sure whether terms of these immigration judges prejudices you in some sort of way. I'm not sure whether it isn't just an internal organizational matter that we should be jumping into. If that was the case, then no litigant would ever be able to raise a challenge under the Appointments Clause of the Constitution. Here, litigants always have the ability to challenge the validity of the appointment of an agency adjudicator. If it was otherwise, then the Attorney General could appoint someone who is clearly unqualified under the regulations. For example, a non-attorney, or an attorney from outside the Justice Department, or a temporary board member to terms of 18, or 24, or 36 months. I mean, simply no other court has agreed with the government that we don't have standing to raise this question. Even if it is a rule of agency organization, which we don't concede, there is no statute that precludes this court from exercising jurisdiction over this case. To the contrary, 1252A2D, 8 U.S.C. 1252A2D says that this court can review any question of law. This is a question of law, whether temporary board members can serve renewable terms. And we think the text and history of the regulation clearly demonstrates that they cannot. If you look at the history, when the position of temporary board member was initially created in 1988, the regs authorized the Director of EOR to appoint them for whatever time he deemed necessary. Ten years later, the regs remanded to explicitly limit temporary members. What's the limiting principle to what you're telling me? Because there's government action of all kinds that in some way would affect an individual. And if the sort of internal organization of the particular agency or department was up for grabs, I'm just not sure how broad that principle is. And one of the things that is concerning about this is that Congress broadly, broadly delegated to the Attorney General the authority to to organize the Department of Justice and the BIA's internal procedures in particular. I mean, that broad delegation is something that we have to confront. Your Honor, it is a black letter principle of administrative law that agencies have to their own regulations. To say that this is a rule that is a purely internal matter, I think that simply proves too much. By that logic, if the Attorney General were to appoint 100 members to the Board of Immigration Appeals, even though the regulation says they can only have 28, would that mean that a litigant wouldn't have standing to challenge the fact that the Attorney General appointed more members to the board than are allowed under regulation? I think clearly not. And here too, our argument is that even assuming the Attorney General is to appoint these members, they have to abide by the eligibility requirements that the Attorney General himself set forth in the regulation. We can leave that aside for a moment, but what is there to indicate that the government failed to abide by what you're saying? Because the regulations that affected the time did not permit temporary board members to serve renewable terms. And in this case, the temporary board member was... Where is that limitation? Hold on a second. I think Judge Berner may have a question. Go ahead, Judge Berner. Yes, thank you. Aren't these simply re-appointments rather than renewable terms? No, Your Honor. They were consecutive terms one after another. But each member was re-appointed. They weren't appointed with renewable terms. They were appointed and then re-appointed. Isn't that right? Well, if you look at the government's own addendum and you look at the underlying paperwork, it is replete with references to renewal. For example, the memorandum from the Director of EOR to the Justice Department said, we request that you renew the term of this temporary board member. Likewise, the memorandums from the Office of Legal Counsel to the Attorney General refer to the renewal of the appointments of these members. Now, maybe there would be a question if there was a gap between one term, one appointment and another, whether it's an actual renewal. But when they followed immediately one after another, I don't see how there could be any linguistic argument that what happened here was not a renewal. I don't see the limitation in the rule to a single six-month term. I mean, if that's the case, we're upending the immigration and deportation structure across a wide swath of cases and we're just turning it upside down. Not at all, Your Honor. It is a prohibition by implication because the regulation relating to temporary immigration judges specifically authorized them to be appointed to renewable terms, whereas the regulation governing temporary board members contains no reference to renewable terms. So just because something is not explicitly prohibited doesn't mean that it cannot be implicitly prohibited. But the word terms is a plural word. It's plural because the other... It's plural because the other, the references to the people who are eligible to be appointed is also phrased in the plural. So it also refers to retired immigration, pardon me, immigration judges, retired board members and administrative law judges. So grammatically, it would have been very awkward for it to refer in the singular. In your situation, no matter how familiar the immigration judge is with the case, once the six-month bell rings, whoopsie, immigration judge has to come off it, right? Your Honor, this challenge relates to board members, not immigration judges. So there's no concern about a judge getting kicked off the case in the middle. The case is just... It seemed to me that you were yanking judges away from a case when the six-month limit expired, that there was no possibility of reappointment. No, Your Honor, at the board, the board members simply decide cases as they come to them. So in our view, I mean, these regulations are no longer in effect, but under the prior version of the regulations, we believe they could serve for six months at a time so they could decide any cases within that six-month period. But perhaps the board is very different from the way it is at this case. The whole idea of a single six-month term to deprive the entire Department of Justice of the possibility of experienced immigration judges, I mean, I think you keep saying that you're not proposing anything that's terribly dislocative or revolutionary, and that I do not... I think what you're proposing is quite dramatic. Quite the contrary, Your Honor. The Justice Department has already amended the regs. So this court's ruling is going to... The only non-citizens who would only benefit if the court accepts our argument are those who already have pretending petitions for review before this court, which is us, and I think there were two or three other cases. Going forward, non-citizens won't be able to raise this argument. So this argument is only limited to cases that were decided under the prior regulations, which were amended in April. So the impact of this case is much smaller than it may have been had the regulations not been amended. Now, what you're asking for in this case is an adjustment of status so that your client would not be found removable, correct? Yes, in terms of the form of relief, yes, it is adjustment of status. That's what you're advocating. Correct, and I can turn to extreme harshness if the court would like. In addition to the fact that your client has committed an aggravated felony and in addition to the procedural hurdles that I think you face in terms of wanting to redo the organization of the Department of Justice, is it not fatal to your case that what you're appealing here is a denial of a waiver of inadmissibility and that you're asking us to take cognizance of a question and an administrative ruling of extreme hardship? Now, if that were a constitutional issue or if that were a statutory issue, that would be one thing, but why is this not simply a discretionary fact-based ruling on the part of an immigration judge that is simply based on the particular facts in a particular case and the kind of discretionary ruling that our precedent makes clear we have no jurisdiction to review? My problem is I think you have multiple problems in this case, any one of which breaks a great deal of China. So on the jurisdictional issue, the precedent of both this court and the Supreme Court makes clear that this court does have jurisdiction to reach it. The Supreme Court just held in Wilkinson that exceptional and extremely unusual hardship is a legal standard that it can review, and if exceptional and extremely unusual hardship is a legal standard, then extreme hardship is itself must also be a legal standard. And it makes no difference that the statute refers to the satisfaction of the Attorney General. By analogy, if a statute required a non-citizen to demonstrate to the satisfaction of the Attorney General that they had not been convicted of an aggravated felony, whether the non-citizen was convicted of an aggravated felony would still be a legal question that this court could review. I think another way to think of it is like a... But every I.J. ruling is an application of some kind of question of law. And the point is that just because ultimately in the background there is the application of some question of law, that doesn't mean that the application of that standard of law somehow raises a major legal question, because there's no legal dispute here about the extreme hardship being the standard that should apply. You argue for it, the other side argues against it. There's no doubt as to what the statutory ruling is, I mean of what the applicable statute is. There's no doubt. The only question is whether the facts of your case warrant some kind of change in status and whether there was an abuse of discretion on the part of the I.J. in denying the waiver of inadmissibility. And if that isn't a factual question, then I'm hard-pressed to think of one it is. Justice Alito made that exact same argument in his dissenting opinion in Wilkinson, but the majority in Wilkinson made clear that the application of a legal standard, here extreme hardship, to a undisputed set of facts is a mixed question of law that this court can review under A2D. But even if you get to that point, even if we were to agree with you on that, then ultimately isn't this an exercise of grace on the part of the I.J. and the Attorney General, and we can't review that, can we? That is true, Your Honor. You can't review the discretionary denial itself. But if this court reverses the agency's extreme hardship determination, then the agency would have to reconsider its adverse discretionary determination. And the reason is that the level of hardship that a non-citizen's removal would cause is a factor or perhaps the most important factor that the agency must consider in deciding whether or not to exercise discretion. But if the I.J. assumes extreme hardship and moves on to the analysis, well, first of all, can they do that? Do you agree that they can do that? We don't dispute that. The I.J. did that. The board did not do that in this case. The board did not say, even assuming that the hardship rose to a level of extreme, we would deny as a matter of expression. We concede that the I.J. did that, but the board itself did not do that. And the board has long held that applications for relief, including applications for waivers of inadmissibility, are continuing in nature, such that whether a non-citizen merits a favorable exercise of discretion depends on the facts as they exist at the time of the final administrative decision. So again, if this court reverses on extreme hardship and remands the case to the board, the board would then have to, under its own precedent, reconsider whether my client merits a favorable exercise of discretion under the facts as they exist at that time in the future. And there's just no telling what changes might occur between now and then. All right. Judge Berner, do you have any questions for Mr. Winograd before he sits down? No. Thank you, Counselor. All right. Thank you, Your Honor. You've got some time left for rebuttal. Mr. Newell? Good morning. May it please the Court. My name is Craig Newell, and I'm here on behalf of the Attorney General. The Court should deny this petition for review as it pertains to Mr. Winograd's order of removal, and it should dismiss the petition for lack of jurisdiction as it pertains to his application for an inadmissibility waiver. As to the temporary board member challenge, there are a number of approaches this Court can take to resolve that challenge, all of which will result in the rejection of it. First of all, there is the statutory basis. The Immigration and Nationality Act provides the Attorney General the broad and unqualified authority to control the internal operation of the Executive Office for Immigration Review, which includes the board. It gives him the broad authority to delegate his own authority as he sees fit. And as we see from the appointment order for a temporary board member, Brown, all show that it was the Attorney General himself who made the appointment after the Director recommended her. There's no question here that these successive terms, even if you agree with the petitioner's argument here, the Attorney General appointed them almost the day that one six-month term expired, the new six-month term was accorded. And it went on from there, and that the Immigration Judge in this case made his ruling within the last of those six-month terms. Is that correct? That is correct, Your Honor. And so notice that the Attorney General is violating his own rules, given the fact that the term terms is plural. Even if you have a question about the Attorney General is complying with the rules that were set forth. You're right, Your Honor. Even if we get down to the question of whether the Attorney General is following his own regulations, he has here. I don't think I'm misconstruing what the petitioner's argument is. He tries to downplay the consequences of it, but I think the consequences of it are quite substantial. And one of the practical effects of upending the rule is that you're going to have to remove immigration judges in the middle of a case, quite possibly, and you're going to be prohibited from appointing the more experienced judges to another six-month term. I mean, it deprives the Department of Justice of familiarity, and it deprives the Department of experience. And those are not inconsequential matters. I agree, Your Honor. That is very true. The underlying purpose of this regulation is because of the workload that the board has. And so by appointing these temporary members, the board is able to more effectively do its work. And by having someone appointed to more terms, they have built up that administrative judicial experience. And so you would want someone to continue if they are doing a good job. And that's what has happened here. But your colleague on the other side says, with respect to doing a good job, that appointing these members temporarily affects their independence because they don't have the same, I don't know that tenure is the right word, but they're subject to the pressures of the Attorney General and his or her whims as to whether or not to reappoint them. Mr. Solomon does make that policy argument. But if we were to get down to policy arguments, policy preferences, the policy preference here should be that of the Attorney General who needs to manage this workload at the time the case is completed. And that similar argument could be made for permanent board members who are in their two-year, they're in a probationary period for that two years before they are fully... Of course, if Congress has a problem with the question of undue influence of the Department of Justice, it is free to change the organization of the department and it is free to rescind its delegation to the Attorney General at any time. But Congress is on notice that this system is in effect and Congress has made no change in it. And when ultimately you have to trace this back to Congress. But now, even if we get over all of these hurdles, we're still talking about extreme hardship. And as I understand, your view is that extreme hardship is a factual matter. And it's the application of a well-understood, well-settled legal standard. And that under our precedent does not give us the authority to simply review that kind of thing. It takes a big stretch to see this as some kind of constitutional or statutory question, does it not? Yes, your honor. With respect to the extreme hardship determination, our first argument is that the court does not even need to get to that because that's the statutory requirements as this court has repeatedly recognized are separate and distinct from the ultimate exercise of discretion, whether to deny or grant someone that relief. That's an act of grace reserved for the Attorney General and is unrevealable. That determination has... Counsel, so is it your position that there's a lack of jurisdiction even if you're a person judged to apply the wrong legal standards? No, your honor. What I'm saying is, first of all, even assuming the extreme hardship determination is a mixed question of law and fact, that the court does not even need to address that because there's this separately dispositive determination, the ultimate discretionary determination to deny him this waiver and the exercise of this discretion. A similar case is the Bogala case where it also involved the petitioner was denied a waiver of inadmissibility. And he raised the legal argument about there's this regulation that says that if your crime is deemed violent or dangerous, then a heightened hardship burden is placed upon you. And he claimed that there was a legal error in that with respect to that eligibility determination. And this court said, well, the board also made this alternative and ultimately dispositive and fatal determination that he would be denied this regardless in the exercise of discretion. And it relied on that. Mr. Wintergrad argues that that didn't happen here, that the IJ may have made that determination, but that the BIA did not. The IJ made that determination and the board affirmed that determination. The board also agreed with this and went very thoroughly why it agreed with this ultimate dispositive determination. And that's what's controlling here. So the question I have, one question I have is, is the application of an agreed upon and well settled legal standard, is the application of that standard to a particular set of facts discretionary in the sense that it deprives the appellate court of jurisdiction? The answer to that question turns on the text of the statutory requirement. Here, the extreme hardship determination, Congress has said must be that you must show the extreme hardship to the satisfaction of the Attorney General. The Supreme Court instructed through its reasoning in Wilkinson that whether Congress retained or revoked the discretionary nature of that determination depends on the text. So with respect to the exceptional and extremely unusual hardship determination for cancellation or removal in Wilkinson, the court rejected the government's argument that the government said, oh, if you look to the predecessor statute, it used to say in the opinion of the Attorney General. So it retains the same discretionary nature. And the court said, no, it does not. Congress expressly removed that. But look, it has retained it in other provisions. And it cited, it pinpointed this extreme hardship determination in 1182H and its parallel one in 1182I. And so that's beyond that the jurisdictional bar applies to. A strong indicator the Supreme Court would agree beyond that text from Wilkinson is that right after Wilkinson, it denied cert in this Bystrom case that challenged a Third Circuit decision that said it had no jurisdiction over the extreme hardship issue. And there's a recent 11th Circuit case called APA v. U.S. Attorney General. I cited this in the 28J letter about this court's Cashel case. And in that case, it dealt with the asylum statute. And to apply for asylum, there's a one-year bar. But there's an exception. If you can show to the satisfaction of the Attorney General that there was change or extraordinary circumstances, that bar doesn't need to apply. So it has the same exact wording as the extreme hardship determination. It's to the satisfaction of the Attorney General. And the 11th Circuit in that case said, relying on Wilkinson, it's hard to imagine stronger textual evidence of discretion than the statute's direction that the standard must be met to the satisfaction of the Attorney General. And so that's what we have here. And that's why the extreme hardship determination is discretionary and unreviewable, just like the ultimate discretionary determination to deny him relief in the exercise of discretion. If the court has no further questions, we ask that the petition for review is denied as it pertains to the challenge to the authority of the temporary board member who issued the final order of removal, and that it should dismiss it for lack of jurisdiction as it pertains to the inadmissibility waiver. Thank you, Mr. Newell. Thank you, Mr. Winograd. Thank you, Your Honors. I'd just like to start where I initially began in talking about the appointments clause of the Constitution, because that is an issue that the government simply cannot overcome. Regardless of how one reads the text of the regulation in question, if that allowed the E.R. Director to indefinitely renew the terms of temporary board members, it would violate the appointments clause, plain as day, or at least it would create an extremely serious constitutional question. So if the court reads the regulation the way the government wants to, it will be endorsing a constitutional violation. Now, in terms of what the Justice— I've never seen an ALJ that wasn't subject at some point in litigation. Every ALJ in the country is subject at some point to a challenge under the appointments clause. The question I was raising with you is, we are talking about immigration and something in which the executive branch of government has a unique and distinctive interest. And we are talking about a set of statutes and of those statutes that touch upon that sovereign interest. And Congress set up this scheme with a broad delegation to the Attorney General. The Attorney General has applied it. In applying it, it came to the attention—it must have come to the attention of Congress over and over and over again what the system was and how it worked. And now what you're saying is, I don't like how the system works. Well, fine, that's your prerogative. But it's Congress's prerogative to change the system. And the system has been in place, according to common understandings, for quite some time. None of that is correct, Your Honor. The Congress itself did not create the Board of Immigration Appeals. The Board of Immigration Appeals is entirely the creation of the Justice Department's own regulations. I understand, but pursuant to a delegation. Correct. And pursuant to a delegation, it is a black letter principle of administrative law that agencies have to abide by their own regulations. And here, the Attorney General's own regulations limited them to six-month terms. Where does Congress take exception to the Attorney General's appointment of a Board of Immigration Appeals? This is a—the Board of Immigration Appeals is deciding thousands of cases every year. If Congress is—if there's anything that Congress would be aware of, it would be that fact. And yet, to my knowledge, I haven't heard any great impulse for reform and doing away with the Board of Immigration Appeals or with the way that the Attorney General is administering it. And it hasn't—Congress has not enacted the kind of amendment that, frankly and respectfully, I wonder whether you are trying to get us to enact from the bench. Your Honor, I'm not aware of any principle of that holds that, unless Congress specifically legislates to disapprove of an existing agency practice, that the agency practice must therefore be lawful. We look at—the only question here is, is the agency abiding by its own regs? And I would just point the Court to what the Department of Justice itself said in 2006 when it amended the regs to allow senior attorneys—senior attorneys to be appointed as temporary board members. It allowed the Director to designate senior EO attorneys with at least 10 years of experience in the field of immigration law to serve for up to six months in this capacity. Again, up to six months. These are the Attorney General's own words, and then for whatever reason, he decided not to live by them. So therefore, we believe the temporary board member— There is too much broken China in your argument. Your Honor, I'm not aware of any principle of statutory interpretation or regulatory interpretation that involves how much China would be broken. But in any event, as I said, the number of non-citizens who would benefit if the Court rules in our favor, I could count on one hand. Because the government has already amended the regulations in question. So there are—going forward, this issue will be moot. The only people that will benefit are, again, my client and a few others. We're going to break all this China in the service of someone who defrauded his employer of a million and a half dollars. I'm also not familiar with any principle of interpretation that you look at the equities of a litigant when interpreting a statute. Before you sit down, when you closed your argument, I asked you a question about the exercise of grace and who exercised it. And you said that the difference here that mattered is that the BIA had not fully exercised that discretion. But a friend on the other side pointed out that the BIA did affirm and, in fact, agreed with the IJ's decision with respect to the exercise of discretion. Why is that not enough to close the door on this case? Because they affirmed, but they did not adopt. In many immigration cases, you will see the board say, we adopt and affirm the immigration judge's decision. They did not do that in this case. So they did not take the immigration judge's decision as their own. They affirmed the immigration judge's findings, but they did not adopt the immigration judge's decision, where she found that even if the extreme hardship standard had been met, that my client would not merit a favorable exercise of discretion. And you think that's a distinction that matters? We do. All right. And for the other reasons we mentioned. Judge Berner, do you have any questions? All right. Thank you, Mr. Wunderbrand. Oh, yeah, yeah, yeah, yeah. All right. I will come down and greet counsel, ask you to come up and greet Judge Wilkinson, and we'll move on to our third and final case.
judges: Albert Diaz, J. Harvie Wilkinson III, Nicole G. Berner